Day two of this panel's sitting for March. We have three cases today for argument. We'll probably take two cases, not relevant to the people at the table here, but those in the audience might need to know we'll take the first two cases and take a brief recess before hearing the final one. I expect each of you, as a frequent flyer, have been here before, know about our lighting system. We have three colors. The color that's important to me is red. When you see that, you're supposed to stop, but it will be green for a while. Yellow will give you a two-minute warning. And when the red comes up, finish your sentence. I think each sentence, when the red light goes on, ten words, probably would finish any relevant reasonable sentence, but you can get more time. Certainly, if you're being asked a question, finish your answer to the question, regardless of the lighting. So, I will call the first case. United States Ex-Rail Gage v. Davis Aviation. Mr. Little, I guess, starts us off. Good morning, Your Honors. My name is Donald Little, and I represent George Gage, Relator on behalf of the United States of America in this matter. May it please the Court. The issues for this Court, as I believe, come down to the subject matter jurisdiction. If we don't get over that hurdle, then, and that's where the main focus of my argument is, is on the subject matter jurisdiction, because if we don't have subject matter jurisdiction, we don't get, in my opinion, to 10b-6 or to 9b. But, if the Court has any questions as to those issues, I'm ready to entertain those. But I would like to focus the primary points of my argument as to the subject matter jurisdiction. In this case, there was a Third Amendment complaint filed. There was a Second Amendment complaint originally filed that was dismissed. Relator was given 30 days to amend the complaint. There was a hearing on the Second Amendment complaint. And in that hearing, because of a 12b-1 or 2 motion as to the subject matter jurisdiction, I tried to make an offer of proof to the Court to allow them, not under 12b-6, but under 12b-1 or 2, that my client was an original source and we had documents. So, that was denied. I said I didn't have the right to have that because I wasn't in court yet. Under 12b-6, I would agree with that. But I think that's a point that should be established. So, I tried to bring documents to the attention of the District Court, which would have shown that my client was an original source. Subsequent to filing a Third Amendment complaint, three days after that, and I am somewhat limited in some questions I can answer here because I have been contacted three days after the Third Amendment complaint by the U.S. Air Force. And there is a criminal investigation going on that I have been told I cannot speak to as I have been asked to assist them in some respects with information. My client. The issue with whether my argument comes or fails to this Court, the law and the facts, as this Court has to interpret them, so that the District Courts understand the changes as in the Fraud Enforcement Recovery Act and as in the Affordable Care Act or the Obamacare Act, as some people call it. And those issues go to whether or not the case, whether my client is an original source as well. I asked for a camera inspection after the Third Amendment complaint. I could not place the documents under seal. If I placed the documents under seal, I would have, the defense counsel would have had access to those documents under seal. Therefore, I would have jeopardized an investigation that I could not even tell anyone, including the Department of Justice civil side, because they cannot piggyback on a criminal side. And so, therefore, I was requested in a hearing, an evidentiary hearing, for in-camera inspection of documents that would have clearly shown that my client was the original source. At the same time, I was facing sanctions for allegedly violating a protective order in a prior case, related case. In that case, the protective order, we have different opinions as to myself and the opposing counsel, but protective order limited it to confidential, attorneys' eyes only, and those kind of documents. But the critical case that this court has long held, and it's the U.S. ex-relator Jamison v. McKesson. If the district court had issues as to the subject matter of jurisdiction, it should not and could not, under the law, summarily dismiss the case. And there's Supreme Court precedence for that as well. And that issue as to not allowing any discovery, no in-camera inspection, and being constrained by not only the pending sanctions, which that didn't concern me too much because we didn't use any confidential information, and there was never any publicly disclosed information, which is the heart of what the main one citation is. The defendants took a crashed aircraft part off of a crashed aircraft without, not even from an FAA repair station, took that part, sold it to one of the other defendants, subcontractor, who then placed it on a part on an aircraft in Afghanistan, tail number 9355, flying the Battlefield Airborne Communication Note, one of the most top-secret aspects of the war there. Counsel, it would help me, I mean, you've described impediments to discovery, the military contract, protective order, and now you're moving into the narrative. But could you identify for me what you say the district court's error is? It should have never dismissed it summarily without having a motion, treating it as a motion for summary judgment, with some investigation as to whether my client was an original source. Now, unless I'm wrong, your client would have the knowledge and be able to allege that they were the original source definitionally as independent and direct knowledge, sort of under the authority. So it doesn't seem to me that even if we accept the hypothesis that you're offering, you wouldn't be able to allege the originality. It seems like you're accepting the fact that he acquired his information when he was working as an expert in the Rolls-Royce litigation. And wouldn't that, under Reagan and the existing case law, automatically mean the district court's conclusion was correct? It wouldn't need more discovery. No, Your Honor, because I disagree with that, because I believe that, especially with the Obama Affordable Health Care Act passage and whether or not the public disclosure bar has been changed, and so, therefore, it's a question of whether or not the knowledge was obtained and material. Okay, now that pertained. The district court's analysis of that argument was, okay, there are four claims that are subsequent to the amendment, but as to the earlier ones, those still would be affected by the civil litigation. That's correct, Your Honor. And you accept that analysis now? I accept that you cannot retroactively get jurisdiction by claiming something else in the third amended complaint and revising your first and second amended complaint. But the issue is when this was filed in the second amended complaint, which is really the substance that we just changed the names, that complaint, I believe, meets the threshold test of an original source in and by itself. And so the court dismissed that, saying they couldn't make sense of it. And the court has a right to. But then when I made an offer to make an offer of proof to show that my client was the original source and was denied that, which I agree, therefore I should not have been allowed to make that because you go within the four corners. But you're not disputing Mr. Gage was not an inside observer or participant in the fraud. He's not a classic whistleblower in that sense. Your argument, I believe, has always been that he acquired the information as an expert looking at materials. Is that correct? No, Your Honor. Unfortunately, the case that was before was a torturous interference case with a business relationship and defamation. My client, who works for American Airlines, which was Rolls-Royce's largest client, looked at things in discovery and found these issues that weren't even on the table. So when you have thousands of documents, he's looking at these issues, which were not for him to look at. And as a mechanic, he issued a suspect unapproved parts thing. He has a duty to do that with his repair license. He worked on the aircraft crash investigation of the Alaskan Airlines. He saw a problem, and then reviewing the contract for Rolls-Royce, he found that Rolls-Royce put the very part on that it said not to use on June 28, 2010. So the un-airworthy claim is based on Rolls-Royce's declaration that they were not un-airworthy, or is it based on a falsely created FAA certification that they can return to service? What's the underlying allegation of falsehood? I'm sorry. I apologize for interrupting. They didn't even falsify an FAA document. They just sent in a certificate of performance from a non-FAA entity and put it on a plane aircraft. So the false certification is a certificate of performance that the aircraft, that the part came off of an aircraft that was in service with 92.9 hours on it and was removed in serviceable condition. It was removed from a crashed aircraft that the tail number came off, and it was salvaged. So you're saying they falsely certified that the part came from an airplane and didn't disclose that it had been in a crash? So it's a nondisclosure, a material omission case? Material nondisclosure. Okay. So how the generator issue, the one where you can trace a part because it actually exploded in Afghanistan, the district court said the trail ended with my client's analysis with Orion when they received the part. Well, this explosion caused the serial number to blow off this cast iron, and there's a plate on the serial number, blow off somewhere in the mountains of Afghanistan. It was on descent, luckily, at 7,200 feet. They, to the greed, they sent it back into warranty to try and get a replacement. And so there's no serial number. The OEM. Right. Those are perhaps compelling facts, but just because a product fails doesn't mean that it was faulty at the time of sale. Your Honor, it has to be under the FAA regulations. It has to be certified to meet its airworthiness certificate with the FAA. Okay. They took, so once the plane crashes, it loses its registration and its airworthiness. You can restore a part back under, you can take any part, and you can restore it back as long as you follow the type certificate requirements that are filed with the FAA. And most of the time, like in the case of these engines in this case, no one else has the repair and overhaul manual to do that except Rolls-Royce. So that's why they had the instant lawsuit to try and pressure Rolls-Royce. It just wasn't economically feasible to do that. So Gage, working for American Airlines, which is Rolls-Royce's biggest customer, and he's been on quality assurance lines all the time. He knows what line replaceable units are. He knows all the facts and looking at this stuff. He files an SUP, suspect unapproved parts, to the FAA. They do nothing. And the second amendment complaint was tempered because of the allegations of the sanctions and the protective order. And then I requested an ability to put in more information and get a hearing on that, and I didn't. And then I had the U.S. Air Force telling me that that was not the case. How about stating very succinctly exactly how he was an original source? He's an original source because he learned of the information on his own, independent of anybody else, without any public documents. Rolls-Royce didn't give him the information. Maybe George's opposing counsel gave him that information. And I'd like to also ask that I ‑‑ is this 20 minutes? Almost up? You're 15. You have five minutes for rebuttal. I have five for rebuttal? Okay, thank you. So he is the only person, and now, without getting into detail, we have shared information, which has led the Air Force to file the subpoenas on the defendants. I don't know how many of the defendants. Go on after this issue. I've had to meet with them. And I'm treading a thin line here between what I can give to the court. That's why I said in camera, to show that he's an original source, because we have e-mails and other things. But if I do that, I get in violation of obstruction of justice, because I'm ‑‑ Is that in your third amended complaint? What's that? Is that in your third amended complaint? The third amended ‑‑ no, Your Honor. I don't think it was. The third amended complaint did not raise the level of the Air Force Inspector General until three days after when they called me and said, what? And the DOJ civil side called me and said, can we meet with you?  So, thank you, Your Honor. Mr. Sprague. Thank you, Your Honor. Judge Barksdale, Judge Higginson, DeSalvo, how are you today? On behalf of Defendant Bombardier, Inc., I come before you and I find myself in a role analogous to a fighter pilot in a target‑rich environment. I have limited ordinance and even more restrictive fuel, having only eight minutes to deal with this. And so, instead of trying to attack every single issue that exists in the pleadings that are not supported by factual pleadings or some of the arguments that were just made, I want to jump right straight to the issue that will decide this case, decide the entire case, and is really beyond dispute. I notice that counsel didn't even address this, instead choosing to talk about the original source issues. But the decisive issue in this case is the Rule 9 pleading issue. Relator agrees with the standards under Rule 9, and even as this court has explained last week in the Little v. Shell Oil case, this case complies with those issues. The Shell Oil case talked about original disclosure but did not have any Rule 9 issues. I believe the place to start with analyzing the Rule 9 is with Judge Barks' well‑reasoned decision. You can read that decision, and by doing so, you get the version of the facts without the spin from either side, if you will. Judge Barks relied on Steere 1 from this court, basically saying that it's beyond dispute that in these kinds of cases, you have to plead the who, what, where, when, and why of a fraud claim. The relator has completely failed to do that. His rather lengthy, and as Judge Barks described, the Second Amendment Complaint 9 unintelligible pleading simply doesn't set forth factual support that would allow a pleading to stand under Rule 12c. He didn't plead the who. He pled Bombardier did this, or Northrop Grumman did that, or CSS did something, but he never identifies individuals with the companies who supposedly made false claims or false representations to the government, either directly or indirectly, and this court has required that in U.S.X.R.L. v. Raffsada, and even in U.S.X.R.L. Willard. Relator doesn't even attempt to identify those people, and frankly, for good reason. The what of his claim, as Judge Higginson has gotten into, is the submission of noncompliant, unapproved parts. He doesn't ever say how they were noncompliant or how they were unapproved. He just makes a conclusory allegation that that's a fact. One assertion in oral argument is that it was not disclosed either on the engines or on some other part that this part was involved in a crash. Is that correct? I don't really know because we haven't seen the facts in the allegations. Without going outside the record, I really can't address that. What I can address is that his factual complaint doesn't say one way or the other why that makes them, even if that's true, why that makes them noncompliant. There's no FAA regulation, certainly none cited in the briefing and none that I know of, that requires a manufacturer who takes a part and sends it back to the original equipment manufacturer, the OEM, for refurbishment or return to service. There's no requirement that they provide any particular history of the part or any particular statement that it was from a crashed airplane, and for good reason because most of the time it doesn't make any difference. I mean, the OEM is going to take that part and they're going to run it through their series of tests as a manufacturer to make sure it complies with the original specifications, and if it works, they return it to service. If it doesn't, they scrap it. No matter why it doesn't work, they scrap it. All the parts, according to the pleading, that were sold in this case were returned to service under proper FAA regulation. He talks about the VFG, the variable frequency generator that exploded on the engine in Afghanistan. That's a couple interesting facts about that, but again, rather than divert from my main target, let me talk about how that got returned to service. It was taken off the airplane. It was tested. It was found to work like it's supposed to, and so it was sold to Orion as a serviceable part. Now, this isn't all in the Third Amendment complaint, is it? I believe the part about the VFG is in the Third Amendment complaint. But all of your wind-dressing here, you need to stick to what's pled in the Third Amendment complaint. Yes, sir. The Third Amendment complaint talks about that VFG. In fact, in his briefing, he says that's the one claim that survives all of this is the VFG claim. The pleading does a couple interesting things with regards to the VFG claim. First, it says it was sold to Orion and placed on an airplane that was being maintained by Orion on a fixed-fee, flat-rate contract. So there's no pleading that that was ever even submitted to the government for payment. The government paid Orion a flat fee. They maintained the airplane however they wanted to maintain it, no additional cost to the Air Force. That is in the Third Amendment complaint. As to that most specific item, the generator, that was involved in the crash, is it accepted? Does the record leave it undisputed that either the Canadian government or Rolls-Royce declared that item to be not airworthy? No. In fact, the pleading doesn't say that, and the facts supporting the pleading, the documents that were supported don't show that either. You have to remember that these airplanes were being operated by the Air Force. They're not FAA airplanes or Canadian airplanes. The Air Force can do pretty much whatever it wants with its airplanes once it gets them and operates them. The saying is they can use binder twine and baling wire to keep those airplanes flying, especially if they're in a war situation and they need to do that. We don't have the contract, nor do we have factual allegations about what the contract says. So we don't know what the requirements are for these parts under the contract. Is it possible that the contract said all parts have to be FAA certified? Yes, it's possible, but it's not in the pleading, and we don't know. He's even admitted in the pleading that he's never seen the contract. If he's never seen the contract, everything else is speculation as to what's in it or what it might require. So how would you be able to state an FCAA action if, in fact, the underlying contract were classified? How would you be able to make the particularity that you say the law requires? At the risk of going outside the record, I don't think the underlying contract is classified. He pleads that it is, and that's his excuse for not providing the details. But, again, that's not to be glib, but that's not our problem. The pleading has to plead facts to support a fraud claim. That has to say that submission of these parts, payment for these parts was conditioned on a particular certification, and there's no pleading to that fact. There's no factual support for that allegation. That alone is enough to dismiss this case like the Steere case where they said, well, these things were defective and blah, blah, blah, and the court, the Fifth Circuit said, wait a minute, there's no indication that that was a condition of payment, and, therefore, this isn't a false claims case. That's what we have here. There's no evidence at all of what the contract says, much less that it conditioned payment upon a certain certification or a certain condition of the parts. There just isn't anything there. And so under Rule 9, the court properly dismissed this case with prejudice. Thank you. Thank you, counsel. Who's next? We take time back willingly. That's great. I represent Steve and Karen Davis and their companies, Davis Aviation Group. That was the entity that bought the damaged aircraft and reconditioned the engines and sold parts to various people in the world, some of which went to — So Davis is the first downstream supplier, then goes to Bombardier, then Northrop and Orion? Is that — Well, Bombardier was a supplier to us because we bought parts from Bombardier to help recondition parts of the plane that we sold. Then we have a — we never had a contract with anybody about anything. We sold to customers. Orion and Northrop Grumman would call us up and say, do you have — Wait a minute. Is this in the complaint? Northrop Grumman would call you up? Let me get — there is nothing in the complaint that alleges that my client had a contract with anybody to do anything. It simply says we sold parts in violation of a FAA regulation 8183, I believe it is, that we violated that form. That's all it says about us. If you're going to have a false claim place, you need to say what the contract required, who violated it, what they did, and they knew they did it, as Judge Higginson has pointed out in his concurrence in the cardinal health care. You can have violations of contract that are not fraud all the time. I mean, it happens in everybody's business. We have it. They didn't know they were committing fraud. What do you understand their fraud claimed to be, a material omission or a — I have no idea. I have — you read paragraph — pick out a particular paragraph. Paragraph 61, it says that my client filed a false form 8130. What did that have to do with any contract at anybody, anywhere? I have no idea that the contract, the form 8130, included under the government our obligation to Northrop or our obligations to Ryan. It certainly wasn't a requirement other than our obligations under the FAA rules. We have rules to do that. We deny we did it, but that's not here today. It's in the complaint. The complaint simply does not state what we did, when we did it, who did it, and why it violated a specific term of a contract. Now, if he could have solved I haven't ever seen the contract by simply saying he could try to get it, which he hasn't done, as far as I know of. And second, he could have said what's in it, because he has some other source of knowledge of it. But my client has no — have never had a contract with the Department of Defense or anybody else. Thank you. May it please the Court, Michael Waldman for Northrop Grumman Corporation. As Judge Higginson noted, and as Mr. Gage freely admits, he came across this alleged fraud while reviewing documents as an expert witness in the Rolls-Royce Challenger litigation. These circumstances for how Mr. Gage discovered the alleged fraud are telling for why his complaint fails under Federal Rule of Civil Procedure 9b, and especially for why Mr. Gage's complaint fails as to my client, Northrop Grumman Corporation. Judge Sparks put it well below when he wrote, and I quote, because Gage only knows what he learned about the Davis defendants and their affiliates, Bombardier and Orion, in the prior litigation, he has no basis for pleading specific facts about the end of the supply chain, Northrop Grumman and the Air Force. Yet pleading specific facts is exactly what is required under Federal Rule of Procedure 9b, and Gage offers absolutely no facts as to Northrop Grumman. Whatever detail and specificity there may be in Gage's complaint regarding earlier parts of the supply chain, he puts forward no detail and no specificity as to his allegations against Northrop Grumman. As my colleagues have mentioned earlier this morning, it's black letter law that to satisfy Rule 9b, a False Claims Act plaintiff must allege the who, what, where, when, and how of the false claims violation. Yet none of that was pleaded as to Northrop Grumman. Nowhere in his complaint does Gage identify who at Northrop Grumman submitted false claims or engaged in wrongful conduct. As Judge Sparks noted in Footnote 4, Gage does not name a single Northrop Grumman employee anywhere in the complaint. Here, Northrop Grumman is left to guess about which of its tens of thousands of employees did something wrong, when they did something wrong, and where they supposedly did it. The case law also makes clear that the submission of false invoices or billing records, a submission to the United States of false billing records or invoices, is the linchpin of any False Claims Act case. Here, Northrop Grumman has, over the years, submitted literally thousands of invoices on the Bacon contract with the Air Force. Again, Northrop Grumman should not have to guess which ones are the invoices that are part of the alleged fraud. If he'd identified a specific contract, and if, I'm just asking you to assume, the downstream supplier to you had materially omitted a crucial fact, would the case law still require that you have knowledge of that falsity? Yes, Your Honor. Under the False Claims Act, there has to be a knowing violation. Knowing is actual fraud, actual knowledge, or a reckless disregard, which is a very high standard. It's, courts have said, it's beyond gross negligence. So the False Claims Act has treble damages, it has penalties, and so it has a high standard of knowledge. So you could have a situation where a low-level supplier, and I don't believe it's this case, but a low-level supplier knowingly engages in false documents, false documentation, knowing it's going to the United States, and that low-level supplier would be liable. Even though the intermediary with the contract with the government wouldn't be? Correct. And as we discuss in our brief, the Bornstein case, which goes to the Supreme Court and I believe in the mid-'70s, 1976, I believe it is, is a case where exactly that happens. It's a case, the case in front of the Supreme Court is against the supplier, as a False Claims Act case, against the supplier. There's no, the prime contractor is not a defendant. They are not accused of having engaged in False Claims Act violation, but it is the case that it could be. Another question just on the law. Looking at original source, it seems like, particularly looking at Reagan, we've contemplated that you could have someone who's slightly secondhand, provided they offer an additional compelling insight or compelling fact. So would you accept that characterization? In other words, he isn't a person who observes the fraud or participates in it, but he then has unique insight and pulls the dots together. He could still be an originator? I would disagree with that, Your Honor. Under the current law, the post-2010, I think if you, the law was changed to say if you have material new information and sort of materially advance the case, then you could be a proper original source. The prior language was pretty straightforward, direct and independent knowledge. And I think the mere fact that you are smarter than other people or have some sort of, you know, insight that other people don't have, doesn't make you a, doesn't mean that you have direct and independent knowledge. That's what the statute requires, and we would argue that he cannot meet that here. And the best case for that strict proposition is what? I'd have to get back to that, Your Honor. Do you concede that he did provide the information before he filed suit? I haven't seen that argued in this case as an independent reason to affirm the dismissal. That hasn't been argued by the defendants below, Your Honor. But I guess we look at this as a case where Rule 9b is actually the easier way for this court to dispose of this case. And, again, he hasn't named the who. He hasn't named the false claims themselves. He hasn't identified the contractual provisions. He says, well, that's because the contract is classified. In fact, the contract is not classified. There is no need for a clearance to see this contract. He cites various FAR regulations. The FAR regulations have no connection to the allegations in his complaint. And, again, as Your Honor mentioned, he hasn't provided a scintilla of evidence to indicate that this was done in a knowing manner. And he has to, under even Iqbal and Twombly, have some plausible inference that could show that we meet the wrongful knowledge element of the False Claims Act. So, for that reason, Your Honor, we believe that the court should apply Rule 9b with bite and without apology, as it said it would do in Grubbs, and dismiss this case. Thank you. Thank you, counsel. We'll hear Mr. Little in rebuttal. Mr. Little, it's my understanding that the district court recently denied a Rule 60 motion and that that is on a separate appeal to us, this court. Yes, Your Honor. What, in general terms, was the basis of the Rule 60 motion? To be able to, when I couldn't get in-camera inspection, and the Air Force then issued the subpoenas, then it was public, then I couldn't, I wasn't jeopardized. I could show then, let the court know that there was a criminal investigation. It was public because they were served with the subpoenas by the U.S. Air Force Office of Special Investigations, Your Honor. That was the purpose because we believe that, at that point, there was new evidence that supports it. But I'd like to just make two quick points, if I can, with the time. What was your basis for saying to the court it even had jurisdiction since this matter was on appeal and, generally, the district court loses jurisdiction over an action while it's on appeal? My understanding, Your Honor, is that under Rule 60b motion, with a new matter, it doesn't lose jurisdiction on that. So the new matter was what you claim you found out three days after your third amended complaint? No, Your Honor. The new matter was the, no, that's when I was called, but it took me working with the Air Force months, and I think they only issued that subpoena months later after that. All right. It was the three days. Also, as to the claims that I don't know what was in the contract or my client doesn't know, the Air Force called me, and they also told me what was in the contract. They also told me that I could— Wait. This is in your complaint? No, Your Honor. I know it isn't, so don't be going outside your complaint. Well, Your Honor, the reason why I think it's relevant is I was told at that point, and then I got a letter from the U.S. Department of Justice, that I was divulging and potentially violating 18 U.S.C., I think it's 1553— You know, you've just been instructed not to go outside the record. Yes, I apologize. So let's just focus on the sufficiency of the third amendment complaint. They've claimed that there's no particularity as to even the generator. You get from a crashed aircraft on 2007 that didn't go to the OEM, which is required under the FAA. He completely misstated FAA regulations. It's called the Instructions for Continued Airworthiness, and the operative word there is continued. That plane crashed. It lost all of its registration serial numbers. That part, we have a document that traces it specifically to north of Grumman, to Orion, and then we have an invoice, a date, a price. Then we have the part in Afghanistan on the north of operated aircraft that explodes. So we have—I mean, it was 7-10, I think, at night, 7,200 feet descent. We get from A all the way to B, and the certificate of performance that was issued was not an FAA certificate. It was as if something that someone out in the hall wrote. Not an engineer was reviewed. Nobody did it. They didn't send it back to the OEM as they should have. Was that in your complaint, somebody out in the hall wrote it? What's that, Your Honor? Was that in your complaint that someone out in the hall wrote it? I apologize, Your Honor. Somebody in the hall could have written the same thing. I apologize if I misspoke. But this is an issue where I have seen no other false claim act case where you take a crash part, disregard it, and U.S. Bornstein and the Fraud Enforcement Recovery Act hold Northrop Grumman responsible for their subcontractors. Mr. Little, it's almost like we have two different complete understandings of the law, one on this table and one on this other, and we'll have to decide between the two. But you have not joined issue, it seems to me, with the whole concept that your complaint needs to say who and what and how and whatever the other words are. And what you're saying is speculation, it seems to me, that you had a crash and then you had another crash and certainly things happened in between. Well, your complaint needs to say what those things are consistent with false claim act jurisprudence. I argue that we put those specifications. We put names. We put dates. We put times. We put places. The only name we didn't put was Northrop Grumman, except in our opposition we didn't have that name, but they were on daily contact. But we have names all the way up until it went to Northrop Grumman. So with that I say this case should be reversed at a minimum on the subject matter jurisdiction and that we do have the particularity in the 9B to at least have a discovery as to the original source. Thank you, Your Honor. All right, counsel.